**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STEVE F. TEGETHOFF, a married man,) | No. CV 08-8052-PCT-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| JOHN M. KETCHER, a married man, ) | |
| Defendant. ) | |

Pending before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint on the grounds of lack of personal jurisdiction and improper venue. (Dkt. # 13.)  Plaintiff filed a Response to Defendant's Motion to Dismiss.  (Dkt. #14.)  Defendant then filed a Reply in Support of his Motion to Dismiss.  (Dkt. #15.)

The Court has reviewed the foregoing documents and now denies Defendant's Motion to Dismiss.

**I.   Background**

On April 27, 2008, Plaintiff Steve F. Tegethoff ("Tegethoff") filed a complaint alleging breach of contract.  (Dkt. #1.)  (Later amended on May 15, 2008, Dkt. #7.)  Tegethoff is a licensed architect and a citizen of Arizona. (Pl.'s Aff. ¶2.)  Tegethoff claims that sometime in August 2006, Defendant John M. Ketcher ("Ketcher") contacted him by telephone regarding the development of a condominium project ("the Project") on a piece of

1   land Ketcher owns in the state of Arkansas.  (*Id.* ¶ 4.)  Ketcher is a roofing contractor and a

2   citizen of Arkansas.  (Def.'s Aff. ¶ 3–4.)

3        According to Tegethoff, the parties discussed the Project again and in person when

4   Tegethoff was in Arkansas on a fishing trip the following month.  (Pl.'s Compl. ¶ 9.)

5   Sometime thereafter, Tegethoff and Ketcher allegedly discussed Ketcher's need for partners

6   to finance the Project, and that the Project would need to be developed to a first stage

7   presentation ("FSP") in order to attract such partners.  (Pl.'s Aff. ¶ 7.)

8        In furtherance of the Project, Tegethoff and Ketcher purportedly struck an agreement

9   whereby Tegethoff would provide his services in the creation of the FSP materials and

10  architectural development of the Project.  (*Id.* ¶ 7, 14.)  As part of this purported agreement,

11  Tegethoff would be paid an hourly fee plus expenses for his services performed in

12  connection with the FSP materials.  (*Id.* ¶ 13–14.)  Payment of Tegethoff's hourly fees was

13  to coincide with the closing of escrow of some of Ketcher's rental properties at some point

14  in the future.  (Pl.'s Compl. ¶ 16.)  Additionally, Tegethoff would be paid a percentage of the

15  cost of construction of the Project.  (Pl.'s Compl. ¶ 14.)

16       In the six-month-span from approximately October 2006 to April 2007, Tegethoff

17  maintains that he worked in Arizona preparing the FSP materials, recording more than 1,000

18  hours of time; 979 hours of which was computer-tracked drawing time.  (Pl.'s Aff. ¶ 15.)

19  Meanwhile, the parties were supposedly in regular communication with each other, including

20  weekly telephone conversations to discuss the progress of the FSP materials and the

21  development of the Project in general.  (Pl.'s Aff. ¶ 9–12.)

22       Ketcher allegedly stayed active and involved in the process, sending Tegethoff a

23  number of items via mail and facsimile to assist him in his work, including a site map and

24  scale drawing of Ketcher's property, architectural drawings of a similar construction project

25  underway in Arkansas, and other such materials to further the progress of the Project and

26  FSP materials.  (Pl.'s Aff. ¶ 5–6, 8, 17.)

27       In March 2007, Tegethoff invoiced Ketcher for various expenses incurred through

28  mid-February 2007, and Ketcher subsequently cut and mailed to Tegethoff a check for the

1   full amount billed.  (Pl.'s Aff. ¶ 13.)

2       For reasons unimportant to the issue at bar, Tegethoff claims that Ketcher suddenly

3   pulled out of the project in April 2007 and refused to compensate Tegethoff for his work

4   performed up to and until Ketcher's withdrawal.  (Pl.'s Compl.¶ 29.)  Tegethoff filed suit in

5   this court due to Ketcher's alleged breach of their agreement, which brings us to Ketcher's

6   Motion to Dismiss wherein he claims that this Court may not assert jurisdiction over him.

7   The Court disagrees.

8   **II.    Analysis of Personal Jurisdiction**

9       The plaintiff bears the burden of establishing personal jurisdiction.  *Schwarzenegger*

10  *v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911

11  F.2d 1357, 1361 (9th Cir. 1990)).  Thus, when a defendant moves prior to trial to dismiss a

12  complaint for lack of personal jurisdiction, "the plaintiff is 'obligated to come forward with

13  facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant.

14  *Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (quoting

15  *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  A plaintiff's

16  uncontroverted allegations must be taken as true.  *AT&T v. Compagnie Bruxelles Lambert*,

17  94 F.3d 586, 588 (9th Cir. 1996).  Conflicts over statements contained in the parties'

18  affidavits "must be resolved in the plaintiff's favor."  *Id.*

19      Because no federal statute governing personal jurisdiction applies here, the Court

20  looks to the law of the forum state; in this case, Arizona.  *See Panavision Int'l, L.P. v.*

21  *Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  Arizona's long-arm statute permits the Court

22  to exercise personal jurisdiction to the extent allowed under the Due Process Clause of the

23  United States Constitution.  Ariz. R. Civ. P. 4.2(a).  "Due process requires that nonresident

24  defendants have certain minimum contacts with the forum state, so that the exercise of

25  personal jurisdiction does not offend traditional notions of fair play and substantial justice."

26  *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Int'l Shoe v.*

27  *Washington*, 326 U.S. 310, 316 (1945)).  In the absence of traditional bases for personal

28  jurisdiction (e.g., physical presence, domicile, consent), the finding of such minimum

contacts is imperative so as to ensure that a defendant's "liberty interest is not being subject to the binding judgements of a forum with which he has established no 'meaningful contacts, ties, or relations.'" *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe*, 326 U.S. at 319).

The two forms of personal jurisdiction that may be exercised over a nonresident defendant are general jurisdiction and specific jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). General jurisdiction may be asserted "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1396 (9th Cir. 1986). The parties agree that general jurisdiction is not applicable here. The dispute therefore lies in whether specific jurisdiction may properly be asserted.

The Ninth Circuit has articulated a three-prong test to determine if a defendant's contacts with the forum state are sufficient to subject him to specific jurisdiction:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of meeting the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 801. If the plaintiff is successful in establishing both prongs, the burden then shifts to the defendant to supply a "compelling case" showing that it would be unreasonable for the court to exercise jurisdiction. *Id.* (citing *Burger King*, 471 U.S. at 477).

A.   **Purposeful Availment**

In cases arising out of contractual relationships, as opposed to claims sounding in tort, it is well established that the first prong of the test is analyzed under a "purposeful

availment" standard.  *See id.  Cf. Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) (noting that the "effects test" would apply to tort cases and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state").  Plaintiff's Complaint states a claim for breach of contract, the Court therefore will apply the purposeful availment standard in its analysis of whether it has specific jurisdiction over Defendant.  The analysis is a qualitative one, however, so as to determine if the "'defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'"  *Core-Vent Corp., v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Purposeful availment has been described as "affirmative conduct which allows or promotes the transaction of business with the forum state."  *Sher*, 911 F.2d at 1362 (internal quotation marks omitted).  The requirement is satisfied if the defendant has created "continuing obligations" with a resident of the forum.  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  Nevertheless, the mere existence of a contract with a resident of the forum, without more, is insufficient to establish personal jurisdiction over a nonresident defendant.  *Burger King*, 471 U.S. at 478–79.  "[P]rior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are factors to be evaluated in determining if the requisite minimum contacts exist.  *Id.* at 479.

Both parties cite *Roth v. Garcia Marquez* in support of their arguments with respect to the purposeful availment prong.  In *Roth*, a California film producer filed a breach of contract suit against a Mexican author and his Spanish agent with whom the producer had been engaged in negotiations for film rights.  942 F.2d 617, 619–20 (9th Cir. 1991).  The author, who resided in Mexico, and the author's agent, who resided in Spain, sought to dismiss the producer's claim for lack of personal jurisdiction.  *Id.* at 620.  In its analysis, the court found only two facts that weighed in favor of the defendants (1) the minimal physical presence of the defendants in California, and (2) that it was the plaintiff who reached out to the defendants in their home countries in effort to solicit the film rights from the author.  *See*

1    *id.* at 622.  Because the court found these two facts to be only "marginally" persuasive, the

2    court ultimately held that the purposefully availment prong had been met.  *See id.*

3         Drawing a parallel to the case here, like the defendants in *Roth*, Defendant had

4    minimal, in fact apparently no physical presence in the forum state.  But, unlike the plaintiff

5    in *Roth*, the Plaintiff in this case did not seek out Defendant.  To the contrary, it was

6    Defendant who solicited Plaintiff's professional services here in Arizona.

7         Further bolstering Plaintiff's argument that *Roth* supports finding personal jurisdiction

8    is the very nature of the contract at issue.  The "future consequences" of the contract in *Roth*

9    required the editing, production, and advertising of the film to be in California.  Although the

10   filming portion was to take place in Brazil, the court found that the activities which prompted

11   payment under the contract, i.e., the plaintiff's performance, depended on activities that the

12   plaintiff would carry out in California.

13        Defendant argues that the future consequences of the contract between he and Plaintiff

14   would have been the actual construction of the Project in Arkansas.  This characterization

15   misapplies *Roth*.  Once the contract was consummated, it was Plaintiff's work in preparing

16   the FSP materials that constituted his performance.  Payments due to Plaintiff in

17   compensation for that work would have been directly related to Plaintiff's activities in

18   Arizona.  That the Project may have ultimately been constructed in Arkansas is irrelevant to

19   the performance for which Plaintiff seeks payment.

20        Accepting Plaintiff's uncontroverted allegations as true and resolving conflicts

21   between the parties' affidavits in the Plaintiff's favor, Defendant purposefully sought out

22   Plaintiff in Arizona, which resulted in an oral contract for the performance of Plaintiff's

23   architectural services and preparation of FSP materials in Arizona.  Moreover, the nature of

24   the contract required that Defendant reach out to and maintain regular communication with

25   Plaintiff in the forum, and Defendant did exactly that through consistent mailings and

26   telephone conversations spanning several months. The character of the agreement itself—the

27   lengthy  development  of  architectural  plans  by  an  architect  that  resided  in

28

1  Arizona—demonstrates that both parties contemplated a course of dealing that required an

2  ongoing connection with the forum.

3      Defendant's affirmative conduct essentially helped to facilitate Plaintiff's performance

4  of the contract in Arizona, and by doing so Defendant surely could have anticipated being

5  haled into court here.  Thus, the Court finds that Defendant purposefully availed himself of

6  the laws of the forum state by soliciting and conducting business with the Plaintiff in

7  Arizona.

8      **B.      Claim Arises Out of Activities**

9      The Ninth Circuit has adopted a "but for" test to determine if a plaintiff's cause of

10  action arises out of the defendant's forum-related activities. *Menken v. Emm*, 503 F.3d 1050,

11  1058 (9th Cir. 2007).  The "arising out of" requirement is met if, but for the contacts between

12  the defendant and the forum state, the cause of action would not have arisen.  *See id.*

13      The "but for" test is satisfied in this matter because the cause of action arises out of

14  Defendant's forum-related activities and involvement. Strictly speaking, but for Defendant's

15  solicitation of an architect in Arizona, Plaintiff's claim for breach of contract would not have

16  arisen.   Additionally, but for Defendant's failure to compensate Plaintiff for services

17  rendered in Arizona under the agreement; i.e., but for Defendant's failure to meet his

18  continuing obligations; Plaintiff's claim for breach of contract would not have arisen.  Had

19  Defendant not solicited Plaintiff's services in the forum state, or if Defendant had performed

20  accordingly under the agreement, the events giving rise to the claim here would not have

21  occurred.   The Court therefore finds that the alleged breach of contract arises out of

22  Defendant's forum-related activities.

23      **C.      Reasonableness of Jurisdiction**

24      When a plaintiff has satisfied the first two prongs of the test, it is presumed that

25  jurisdiction is reasonable unless the defendant is able to "'present a *compelling case* that the

26  presence of some other considerations would render jurisdiction unreasonable.'" *Ballard v.*

27  *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (quoting *Burger King*, 471 U.S. at 477).  An

28

1    unreasonable exercise of jurisdiction would violate the Due Process Clause of the

2    Constitution. *Ziegler*, 64 F.3d at 474–75.

3         The Ninth Circuit considers the following seven factors in determining whether the

4    exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the

5    defendant's purposeful interjection into the forum state; (2) the burden on the defendant of

6    litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state;

7    (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

8    resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in

9    convenient and effective relief; and (7) the existence of an alternative forum. *Ziegler*, 64

10   F.3d at 475 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)) (finding

11   that all seven factors must be weighed, but that none is dispositive); *see also World-Wide*

12   *Volkswagen Corp.*, 444 U.S. at 292 (listing several of the seven factors).

13        In consideration of the Court's finding that Defendant's contacts with the forum state

14   met the purposeful availment prong, the Court has no difficulty finding that Defendant

15   purposefully injected himself into the forum.  Furthermore, the degree to which Defendant

16   injected himself into the forum state was not insignificant.  Defendant actively solicited

17   business from an Arizona-based architect and maintained regular contact with the forum so

18   as to carry on the business he solicited.

19        The second factor—the burden on the defendant of litigating in Arizona—can be

20   juxtaposed with the sixth factor—the importance of the forum to the Plaintiff's interest in

21   convenient and effective relief.  Defendant has done little to illustrate why litigating in

22   Arizona would impose a "substantial" burden upon him, save for the inherent expense in

23   defending a lawsuit outside of his home state.  "Nevertheless, with the advances in

24   transportation and telecommunications and the increasing interstate practice of law, any

25   burden is substantially less than in days past." *CE Distrib. v. New Sensor Corp.*, 380 F.3d

26   1107, 1112 (9th Cir. 2004).  This factor therefore only slightly favors Defendant.

27        In contrast with the sixth factor, it is without question that an Arizona forum would

28   provide the most convenient and effective relief for Plaintiff's claim seeking remedies under

1    Arizona law.  Although convenience for the plaintiff might not be of paramount importance

2    in the balancing of factors, is still a factor, and one which slightly favors Plaintiff.

3           As there is no apparent conflict between the sovereignty of Arkansas and that of

4    Arizona, factor three supports the exercise of personal jurisdiction.  *See id.*

5           Additionally, Arizona maintains an interest in providing a forum for its residents to

6    seek redress.  *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988).

7    Even though Defendant characterizes Arizona's interest as "minimal," he does not make any

8    real effort to indicate how Arkansas's interest is any greater, or even the same.  Thus, the

9    forth factor also supports the exercise of personal jurisdiction.

10          The fifth factor concerns the location where judicial resolution of the dispute would

11   be most efficient.  The parties agree that the witnesses and evidence pertaining to this matter

12   are located equally in both states.  Thus, neither forum is likely more efficient than the other.

13          Moving on to the seventh and last factor (as the sixth was evaluated above), an

14   alternative forum certainly exits in Arkansas, and although this favors Defendant, it is not

15   enough to get him home.

16          In summary, a plurality of the factors favors Plaintiff or are otherwise neutral, and

17   Defendant has failed to bring forth a compelling case demonstrating that the exercise of

18   jurisdiction over him would violate his due process rights.

19          Plaintiff has successfully made a prima facie case of the jurisdictional facts, and the

20   Court therefore finds the exercise of jurisdiction over Defendant to be appropriate.

21   **III.   Improper Venue**

22          The Court turns next to Defendant's claim that Plaintiff has brought this matter in an

23   improper venue.

24          28 U.S.C. § 1391(a) illustrates three circumstances in diversity cases that dictate

25   where venue may be proper.  The only circumstance relevant to whether Plaintiff selected

26   the proper venue in this case is if Arizona is "a judicial district in which a substantial part of

27   the events or omissions giving rise to the claim occurred, or [where] a substantial part of

28   property that is the subject of the action is situated."  *See* 18 U.S.C. § 1391(a)(2).

1    Defendant mischaracterizes the agreement between Plaintiff and him by arguing that
2  the contract pertained only to Defendant's real estate in Arkansas.  The alleged breach of
3  contract that prompted Plaintiff's claim did not directly pertain to the Arkansas property,
4  however, but to Plaintiff's architectural services and preparation of FSP materials
5  showcasing his architectural plans.  The Ninth Circuit has identified the place of performance
6  (as opposed to the place of repudiation) as the appropriate venue in claims based on breach
7  of contract because, among other reasons, "the place of performance is likely to have a close
8  nexus to the underlying events."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d
9  834, 842 (9th Cir. 1986).  Plaintiff worked on the architectural plans and FSP materials
10 exclusively in Arizona.  The Court therefore finds that venue is proper in the District of
11 Arizona.

12 **IV.    Conclusion**

13    Plaintiff has satisfied the three-prong specific jurisdiction test with respect to
14 Defendant.  The Court therefore holds that it has specific jurisdiction over Defendant.
15 Additionally, the Court holds that venue is proper in this court.  Defendant's Motion to
16 Dismiss for lack of personal jurisdiction and improper venue is denied.

17    **IT IS ORDERED** that Defendant's Motion to Dismiss for Lack of Personal
18 Jurisdiction and Improper Venue (Dkt. #13) is **DENIED**.

19    DATED this 14th day of November, 2008.

James A. Teilborg
United States District Judge

- 10 -